**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**ROCK M. POLLOCK,**

    **Plaintiff,**

**v.**                                            Case No. 8:07-cv-1114-T-27TBM

**MICHAEL J. ASTRUE,
Commissioner of the United States
Social Security Administration,**

    **Defendant.**
_____/

**REPORT AND RECOMMENDATION**

The Plaintiff seeks judicial review of the denial of his claim for Social Security disability benefits.[1] Because the decision of the Commissioner of the United States Social Security Administration is not supported by substantial evidence or is not in accordance with the correct legal standards, I recommend that it be reversed.

I.

Plaintiff was thirty-one (31) years of age at the time of his administrative hearing in April 2006. He stands six feet, three inches tall, and weighed 210 pounds, down from a usual weight of 230 pounds. Plaintiff completed the eleventh grade and subsequently obtained his GED. His past relevant work was as a store manager for Rent-A-Center and an assembly

---

[1] This matter comes before the undersigned pursuant to the Standing Order of this court dated August 28, 1987. *See also* M.D. Fla. R. 6.01(c)(21).

worker for Trailer Pines.[2] Plaintiff applied for disability benefits in September 2002, alleging disability as of September 29, 2000, by reason of a work-related back injury and associated pain. Plaintiff's application was denied originally and on reconsideration.

The Plaintiff ultimately received a *de novo* hearing before an Administrative Law Judge ("ALJ"). The Plaintiff waived representation at the hearing and testified in his own behalf. Additionally, a vocational expert was called by the ALJ. Plaintiff's father was present at the hearing but did not testify.

In essence, Plaintiff testified he was unable to work due to severe pain associated with an injury that occurred in November 1999 while he was working as a manager for Rent-A-Center in which he injured his back while moving a television set. He attempted to go back to work in September 2000 but was only back one day when he re-injured his back. He received worker's compensation benefits in conjunction with his work-related injury for a couple of years and then was out for six months under the Family Medical Leave Act. When he could not return to work, he was terminated. Prior to working for Rent-A-Center, Plaintiff was employed with Pines Trailer securing floor boards to trailer frames.

Plaintiff testified that his recent MRI shows that his degenerative disc disease and/or the herniated disk in his back has progressed. By his account, all of his doctors have recommended surgery but Rent-A-Center has declined to approve the surgery.

Plaintiff is engaged and resides with his fiancee who is a licensed practical nurse. She takes care of the housework. Plaintiff is able to care for his personal hygiene and

---

[2] Plaintiff claimed prior part-time work as a greeter and stocker and he worked applying decals to semi-trailers for four to five weeks.

grooming although he sometimes has difficulty bending down to wash his feet and put on his socks. He can kneel down "to a certain point," and is able to climb four or five stairs. He testified that he cannot even lift a gallon of milk because it causes him severe pain. He is able to walk twenty minutes before needing to stop and stretch his back. He can stand for twenty to twenty-five minutes but then his legs go numb to his knees. He can sit for twenty-five to thirty minutes but then he has pain and discomfort. If he sits still, it is better than trying to stand up and stretch because it hurts worse when he sits back down again. He can drive, but only does so about twice a week because of the numbness in his legs. That makes him afraid to drive. In an eight-hour day, Plaintiff testified he could stand and sit about ten minutes (each) per hour. Otherwise, he needs to lie down.

As for daily activities, Plaintiff estimated that, on a normal day, he is lying down in bed for two to four hours. Physical therapy does not eliminate the pain. It does, however, lessen the degree of pain. He testified that he has constant back pain. Additionally, he experiences pain down his right arm and in his neck. Plaintiff also testified to problems with hearing in his right ear. He denied any problems with vision or breathing. He has problems with balance due to his legs going numb. According to Plaintiff, his problems have persisted since 1999 and his symptoms have gotten progressively worse. Plaintiff also stated that he is severely depressed but has been unable to get medication for his depression because he was denied further treatment by Rent-A-Center. (R. 295-314).

Next the ALJ took testimony from Nicholas Fidanza, a vocational expert ("VE"). After classifying Plaintiff's past work as a store manager as heavy exertional work as performed and his work at Pines Trailer as an assembler of vehicles as medium exertional

3

work, the VE testified on a hypothetical of an individual of Plaintiff's age, education, and work experience capable of a range of light work who could sit, stand or walk for six hours in an eight-hour day and occasionally climb, balance, stoop, crouch, and kneel, but who should avoid moving machinery, unprotected heights, hazards, extreme humidity and wetness. The VE opined that such individual could not perform Plaintiff's past relevant work as Plaintiff performed it, but could perform the work of a store manager as that position is described in the Dictionary of Occupational Titles ("DOT"). Additionally, the VE opined that the hypothetical individual could perform other jobs available in the local and national economy, including electronic accessories assembler, injection molding tender, and electronics worker.

On a second hypothetical of an individual who could perform a limited range of sedentary work, i.e., who could carry ten pounds occasionally and lift ten pounds frequently; could sit, walk, or stand for twenty minutes at a time before needing to alternate positions and sit or stand each a maximum of three hours per day, but not consecutively; could never climb ladders or scaffolds and only occasionally balance, stoop, crouch, and kneel; and should avoid moving machinery, unprotected heights, hazards, sustained humidity and wetness, the VE opined that such individual could not perform Plaintiff's past relevant work or any other positions in the local or national economy. (R. 315-21).

Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are addressed adequately by the parties' memoranda and are not set out herein in detail. Pertinent to this appeal, Plaintiff's last date insured was March 31, 2006.

By his decision of June 26, 2006, the ALJ determined that while Plaintiff has severe impairments related to lumbar spinal disc disease with radiculopathy, he nonetheless had the

4

residual functional capacity to perform a limited range of light exertional work that did not involve more than occasional climbing, balancing, stooping, crouching, kneeling, or crawling and any exposure to moving machinery, unprotected heights, hazards, extreme humidity, coldness, or wetness.[3] Upon this finding and the testimony of the VE, the ALJ concluded that while Plaintiff could not perform his past work, he could perform jobs available to him in the local and national economy. Upon this conclusion, the Plaintiff was determined to be not disabled. (R. 12-21). The Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner.

## II.

In order to be entitled to Social Security disability benefits, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See*

---

[3]Light work is defined as work that involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. A job in this category may require a good deal of walking or standing, or sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, the claimant must have the ability to do substantially all of these activities. 20 C.F.R. § 404.1567(b).

5

*id.* at § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Commissioner must apply the correct law and demonstrate that he has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Miles*, 84 F.3d at 1400; *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

III.

By his memorandum, Plaintiff contends that the ALJ failed to (1) consider all of his symptoms in accordance with applicable regulations and rulings, (2) consider all of the opinion evidence of record in accordance with applicable regulations and rulings, and (3) accord proper weight to the evidence from his primary treating physician, Dr. Rick Cernovich, and credited instead the opinions of Dr. Joseph W. Maslak, a consultative examiner. According to Plaintiff, he has the residual functional capacity ("RFC") to perform no more than sedentary work. Given an RFC for sedentary work, Plaintiff urges that grid rule 201.14 directs a finding of disability because he does not have transferable skills. Thus, he urges a conclusion that he has been disabled since November 12, 1999. (Doc. 31 at 1-3).

The Commissioner responds that substantial evidence supports the ALJ's finding that Plaintiff is not disabled. In particular, the Commissioner contends that the ALJ properly rejected Dr. Cernovich's opinion as internally inconsistent and inconsistent with the records from other examining doctors and the record as a whole. As for the ALJ's credibility finding, the Commissioner urges that it is supported by the medical record. As for Plaintiff's grid argument, the Commissioner notes that grid rule 201.14, cited by the Plaintiff as directing a conclusion of disability, is inapplicable as it is used for an individual limited to sedentary work who is closely approaching advanced age, between 50 and 54 years of age. Given Plaintiff's younger age, the rule is simply inapplicable. Here, the ALJ employed the grids solely as a guide for decision and properly obtained evidence from a VE. Thus, the Commissioner urges that his conclusion based on the VE's testimony is not shown to be in error. (Doc. 32).

7

As for the claim that the ALJ failed to properly credit the evidence and opinions of Dr. Cernovich, the issue is a close one. By the objective and clinical evidence, Plaintiff undeniably has a severe impairment in his lumbar spine accounting for his back and leg complaints and limitations. Such is documented by objective findings and the evaluations of his treating and examining doctors. At least three doctors believed he needed surgery. (R. 96, 181-84, 227). On the other hand, the objective medical evidence and clinical findings substantially undermine any claim of a significant neck impairment. *See e.g.* (R. 90-93, 179-80, 79-86, 181-89, 197-203). Dr. Cernovich's records show that after injuring his back in November 1999, treatment included extensive physical therapy and Plaintiff was periodically evaluated by other doctors. Plaintiff's condition improved with physical therapy and he was eventually cleared to return to work. After re-aggravating his back condition, he returned to physical therapy, which again brought improvement. In about July 2001 he was again returned to work.[4] Thereafter, in an assessment completed in October 2002, Dr. Cernovich assessed Plaintiff as disabled from any work. The conclusion was based on "progressively worsening of [symptoms] and MRI." The doctor noted that Plaintiff would never return to his present work, and he was "unsure" when he might do other gainful employment, suggesting surgery might help. He checked a box reflecting "moderate limitation of functional capacity; capable of clerical/administrative (sedentary) activity." (R. 94-96). In August 2003, Dr. Cernovich submitted two forms, the first form reflecting limitations in range of motion, normal ambulation, and a two hour limit on sitting or standing at a stretch. (R. 79-80). The

---

[4]The Commissioner's brief fairly well sets out the course of treatment by this doctor between November 1999 and August 2003. *See* (Doc. 32 at 3-5).

second form reflected normal grip strength and function in the upper extremities, normal ambulation, and a four hour limit on sitting or standing at a stretch. (R. 81-83). As for the evaluating doctors, while none offered similar opinions, their reports do not contradict Dr. Cernovich's assessment of Plaintiff's lumbar injury. *See* (R.181-89, 197-203). A later treating source, Dr. George J. Martin, Jr., a neurosurgeon, recommended that Plaintiff undergo surgical intervention to prevent further progression and to relieve painful episodes. (R. 227).

As the decision reflects, while the ALJ fairly reviewed the medical record, he ultimately discounted the opinions of the treating doctor. In this circuit, when considering a treating physician's testimony, the ALJ must ordinarily give substantial or considerable weight to such testimony unless good cause is shown to the contrary. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004); *Lewis v. Callahan*, 125 F.3d 1436,1440 (11th Cir. 1997); *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986); *see also* 20 C.F.R. § 404.1527(d)(2). Such a preference is given to treating sources because they are likely to be best situated to provide a detailed and longitudinal picture of the medical impairments. *Lewis*, 125 F.3d at 1440. Good cause for rejecting a treating source's opinion may be found where the treating sources's opinion was not bolstered by the evidence, the evidence supported a contrary finding, or the treating source's opinion was conclusory or inconsistent with his or her own medical record. *Phillips*, 357 F.3d at 1240-41 (citing *Lewis*, 125 F.3d at 1440); *Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987). In this circuit, where the Commissioner has ignored or failed properly to refute the treating physician's testimony, such testimony, as a matter of law, must be accepted as true. *MacGregor*, 786 F.2d at 1053.

Upon careful consideration, I conclude that the ALJ has not provided the requisite good cause for discounting the opinion of Plaintiff's treating physician. Here, the decision reflects that the ALJ fairly reviewed the records and opinions of Dr. Cernovich. However, in addressing the opinion evidence, the ALJ found in favor in the nonexamining doctors' assessments that Plaintiff could perform light exertional work and little favor in the opinions of Dr. Cernovich suggesting that he could not.[5] (R. 18). Such might be permissible if adequately explained, but that is not the case here. By my reading of the decision, the ALJ credited the doctor's early reports and opinions, i.e., that Plaintiff had markedly improved and was doing better, once Plaintiff completed physical therapy and a work hardening program he could return to work unrestricted, and Plaintiff's subsequent release to work in August 2001 with a lifting limit of 50 pounds. (R. 18-19). Nothing in the record contradicts those reports. However, at some point in 2002, Plaintiff's condition appears to worsen, as evidenced by his return to treatment with Dr. Cernovich, the findings revealed on an MRI of his lumbar spine in September 2002, and Dr. Cernovich's opinion as expressed in a functional capacity form in October 2002. To the extent the ALJ rejected these 2002 opinions/findings as inconsistent

---

[5]The ALJ undoubtedly adopted the RFC opinions of the nonexamining, state agency doctors as each opined that Plaintiff could perform a limited range of light exertional work (R. 189-86, 218-25) and that is the RFC assessed by the ALJ. *See* (R. 15). No other source, treating, examining, or otherwise, indicated that Plaintiff could perform light work. Notably, one of the nonexamining doctors noted that there was not a treating or examining source statement regarding Plaintiff's physical capacities in the file (R. 195), thus indicating that he had not seen or reviewed Dr. Cernovich's October 2002 opinion, and the other nonexamining doctor indicated that, while there was such a statement in Plaintiff's file, his opinion did not differ significantly from it and thus no explanation was provided for a differing opinion (R. 224). In any event, the reports of reviewing, nonexamining physicians, standing alone, do not constitute substantial evidence on which to base an administrative decision, particularly where, as here, they conflict with the opinions of a treating physician. *See Lamb v. Bowen,* 847 F.2d 698, 703 (11th Cir. 1988).

with Dr. Cernovich's earlier rendered opinions and treatment notes, including those in May and June 2002 wherein the doctor noted Plaintiff's report of improvement with a Medrol pack and a full range of motion in the torso and a negative straight leg raise test on the left, the record does not provide substantial support for doing so given the unrefuted evidence of a worsening condition. The same is true with respect to the opinions Dr. Cernovich rendered in August 2003. If anything, the objective medical evidence, including the reports from a consultative examination in August 2003, a disability examination in March 2003, and a report from Plaintiff's treating neurosurgeon in April 2006,[6] appears to bolster Dr. Cernovich's opinions that Plaintiff functional ability was severely limited due to a herniated lumbar disc with radiculopathy. Even assuming the objective medical evidence did not bolster Dr. Cernovich's opinions, the record is entirely devoid of any evidence that contradicts his opinions. Consequently, the ALJ failed to provide adequate cause to reject the opinions expressed by Dr. Cernovich after mid 2002.[7]

---

[6]During a disability examination in March 2003, Dr. Maslak noted abnormalities on MRI, positive straight leg test bilaterally, significant pain in the lumbar spine, and an inability to bend over significantly secondary to pain in the lumbar spine. (R. 188). On consultative examination in August 2003, Dr. DeYoung noted positive straight leg test in both legs and reported that, "[s]ensory function in the lower extremities demonstrates markedly decreased pinprick sensation in the L5-S1 dermatome, particularly on the dorsal surface of the foot and lateral edge of the foot on the right side. This does not extend fully up to the level of the knee as one might expect with an L5 dermatomal pattern, but it does extend nearly to the knee level on that right side." (R. 202). Thereafter, Dr. George J. Martin noted in April 2006 that objective findings on MRI's reveal progressive and significant spinal stenosis and degeneration. (R. 227). It was this doctor's opinion that surgical intervention was necessary to prevent any further progression of Plaintiff's spinal condition and to relieve Plaintiff's painful episodes. *Id.*

[7]After recounting Dr. Cernovich's records, the ALJ stated that he "gives minimal weight to the objective medical evidence and finds that it does not support the conclusions

11

The ALJ's failure to state adequate cause for not according significant weight to this doctor's opinion is error. Under the applicable standard, where the ALJ fails to properly refute the treating physician's testimony, such testimony, as a matter of law, must be accepted as true. Read as a whole, the records from Dr. Cernovich, together with the objective evidence as of the date of the MRI taken in September 2002 (and for some time thereafter), suggest that Plaintiff could not perform some of the activities necessary for light exertional work.[8] In these circumstances, the RFC assessments by the nonexamining doctors do not offer substantial evidence for the ALJ's conclusion. *See Lamb,* 847 F.2d at 703. Nor can the court find the failure to properly address Dr. Cernovich's opinions harmless error given the lack of development of any vocational evidence for work at the sedentary level. Accordingly, because the ALJ has failed to properly address the opinion evidence from the treating doctor, a remand is warranted for further consideration of such evidence. In doing so, the ALJ is obliged to accept as true the limitations imposed by this doctor. Furthermore, under the applicable standard and given the circumstances in this case, a remand is necessary for further assessment of the Plaintiff's RFC and vocational capacity.

---

regarding claimant's total incapacity, but rather Plaintiff can engage in a wide range of light work." (R 19). On this record, there was no basis for the ALJ to question or otherwise give the objective medical evidence *minimal* weight as such evidence remains wholly unrefuted by any other evidence. Furthermore, aside from the opinions of the nonexamining doctors, nothing in the record supports a finding that Plaintiff can perform light exertional work.

[8] Plaintiff's claim that he is disabled as of September 2000 or earlier is refuted by the record. At best, he may claim an onset date from on and after the date of Dr. Cernovich's assessment in October 2002. Even that date is problematic given that the assessment suggests Plaintiff can perform sedentary work, a conclusion with which Plaintiff apparently agrees. Because the ALJ failed to develop vocational evidence at the sedentary level, additional vocational evidence may be necessary as well.

On this conclusion, it is unnecessary to consider the ALJ's credibility finding. *See Jackson v. Bowen*, 801 F.2d 1291, 1294 n. 2 (11th Cir. 1986) (stating that where remand is required, it may be unnecessary to review other issues raised). However, this too will have to be reassessed on remand.[9]

IV.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is not supported by substantial evidence or is not in accordance with the correct legal standards, and I recommend that it be reversed and remanded for further proceedings before the Commissioner consistent with this Report and Recommendation. I further recommend that the Clerk be directed to enter Judgment in favor of the Plaintiff and to close the case, and the matter of fees and costs shall be addressed upon further pleadings.

Respectfully submitted this
29th day of January 2010.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

---

[9]As for Plaintiff's claim that he is capable of performing sedentary work and thus is disabled under the grids given his age, education, and work experience, the argument is simply wrong and may well undermine his claim for benefits on remand. As the Commissioner notes, the grid rule cited by Plaintiff, rule 201.14, is wholly inapplicable to his circumstances because Plaintiff was not then closely approaching advanced age (50-54). If Plaintiff's case were subject to being decided under the grids, the applicable rule given his age, education and work experience appears to be grid rule 201.28, a sedentary work rule that applies to younger individuals (18-44). 20 C.F.R. Pt. 404, Subpt. P, App. 2. That rule directs a conclusion of not disabled, as do all of the sedentary rules for younger individuals.

## **NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal and a *de novo* determination by a district judge. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; M.D. Fla. R. 6.02; *see also* Fed. R. Civ. P. 6; M.D. Fla. R. 4.20.

Copies furnished to:
The Honorable James D. Whittemore, United States District Judge
Counsel of Record